# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Louise W., | Case No. 17-cv-4973-SRN-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy A. Berryhill, | |
| Defendant. | |

This matter is before the Court on the parties' cross-motions for summary judgment. (Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 18; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 20.) For the reasons set forth below, the Court recommends that Louise W.'s[1] motion for summary judgment be GRANTED IN PART AND DENIED IN PART and the Commissioner's motion for summary judgment be GRANTED IN PART AND DENIED IN PART.

## I. Procedural History and Factual Background

On May 15, 2012, Louise W. filed a pro se application for supplemental security income, alleging disability as of November 15, 2006. (R. 147–148.) Ms. W.'s claim was originally denied on September 23, 2012. (R. 36–48.) In July 2013, she obtained counsel, but her claim was dismissed on May 30, 2014. She later learned that her counsel had failed to timely file a request for a hearing after her request for reconsideration was denied. (R. 96.) Ms. W. then submitted a letter request to the Appeals Council, asking them to set aside the dismissal because she had relied upon her counsel to file her request for a hearing, which it ultimately failed to do. (R. 98.) The Appeals Council remanded Ms. W.'s claim for a good cause hearing on November 28, 2014. (R. 73–74.) After a hearing in March 2015 the ALJ found good

---

[1] Plaintiff in this case will be referred to as Louise W. or Ms. W. in accordance with a new local rule designed to protect the privacy of social security claimants.

cause existed to permit Ms. W.'s untimely hearing request. (R. 19.) A second hearing was held before Administrative Law Judge Richard Thrasher on June 24, 2015 to consider Ms. W.'s application for benefits. Ms. W. appeared pro se. (R. 728.) After receiving an unfavorable decision, she now appeals.

### A. ALJ Thrasher's Decision

ALJ Thrasher reviewed Ms. W.'s case and issued a written opinion. He followed the established five-step evaluation process in making his determination regarding Ms. W. *See* 20 CFR 416.920(a). At step one, ALJ Thrasher found that Ms. W. had not engaged in substantial gainful activity since her alleged onset date, November 15, 2006. (R. 22.) He noted that Ms. W. received some income from work into 2007, but found that the work fell below the substantial gainful activity level. (*Id.*) At step two, ALJ Thrasher determined that Ms. W. has several severe impairments: "[M]yalgia and myositis (generalized pain), unspecified; low back pain with mild degenerative joint disease and scoliosis; neck pain with degenerative disc disease and mild degenerative joint disease of the cervical spine with congenital fusion; thoracic spine degenerative joint disease; mild to moderate sensorineural hearing loss; periodic limb movements of sleep with associated insomnia, hypersomnia, dyssomnia, and restless leg syndrome; bilateral foot/ankle pain due to metatarsalgia, plantar fasciitis, tendonitis of the ankles, lateral ankle instability and a calcaneal spur (also described as biomechanical foot pain with flat feet); and obesity." (R. 23.)

At step three, ALJ Thrasher decided that Ms. W.'s impairments, singularly or in combination, did not medically equal the severity of any of the listed impairments at 20 CFR Part 404 Subpart P, Appendix 1. (R. 24.) He specifically considered Listing 1.04 (disorders of the spine), Listing 1.02 (major dysfunction of a joint), and Listing 2.10 (hearing loss). (R. 25.) ALJ Thrasher also considered the additional and cumulative effects of obesity on Ms. W.'s impairments but concluded that no clear evidence demonstrated that obesity contributed to meeting or equaling any of the listings. (*Id.*)

At step four, ALJ Thrasher determined that Ms. W. has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with

the additional limitations of "occasional climbing of ramps and stairs; no climbing of ladders/ropes/scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; frequent reaching overhead on a bilateral basis; limited to moderate noise exposure and must be allowed to use a headset when using the telephone; and no exposure to unprotected heights or unprotected moving machine parts." (R. 26.) ALJ Thrasher explained that he found Ms. W.'s statements regarding the disabling effects of her impairments to be not credible and "entirely out of proportion to the minimal objective findings of record." (R. 27.) He further noted that Ms. W. failed to follow many recommended treatments for her conditions. (R. 27–29.)

Finally, at step five, ALJ Thrasher found that Ms. W. is capable of performing her past relevant work as an order clerk, general office clerk, and data entry clerk. (R. 34.) He therefore concluded that Ms. W. is not disabled as defined in the Social Security Act. (*Id.*)

Ms. W. then filed a request for review by the Appeals Council. With her request, Ms. W. submitted additional medical records for the Council's consideration. However, in September 2017, the Council denied Ms. W. review. (R. 9.) In its denial, the Council noted that the additional evidence submitted either did not show a reasonable probability that it would change the outcome of the decision, or it did not relate to the period at issue. (R. 10.) With this denial, ALJ Thrasher's decision became the final decision of the Commissioner of Social Security, making this case ripe for review by the District Court. Ms. W. appealed the final decision to this Court, and she and the Commissioner have both moved for summary judgment.

## II. Analysis

Ms. W. argues that she is entitled to summary judgment for three reasons. First, she asserts that she did not receive the due process to which she was entitled during the proceedings below, including the ALJ hearing. Second, Ms. W. challenges the Appeals Council's refusal to consider additional evidence. Finally, she argues that the ALJ improperly assessed her mental health issues, and had he considered them properly, they would have fundamentally altered the ALJ's RFC finding. For the

3

reasons set forth below, the Court finds that Ms. W.'s first assignment of error is correct in part, and remand is required.

## A.     Due Process

Ms. W. argues that the SSA violated her due process rights in two ways. First, she asserts that the ALJ and other employees of the agency mishandled her right to counsel. Also, she asserts that the ALJ should have done more to develop a fulsome record in light of her status as a pro se claimant. Although the Court disagrees with Ms. W. regarding her right to counsel, the Court finds that Ms. W.'s second argument has merit.

### 1.     Ms. W.'s Waiver of Her Right to Representation

Ms. W. first argues that she did not receive due process during the hearing before ALJ Thrasher because she was not adequately informed of her right to counsel, which deprived her of the opportunity to cross-examine the testifying experts at her hearing. The Court disagrees.

Although a claimant has no constitutional right to counsel at a Social Security hearing, disability claimants have a statutory right to counsel, should they choose to obtain it. *Hungerford v. Colvin*, No. 14cv613, 2014 WL 7272669 at *12 (D. Minn. Dec. 18, 2014) (citing 42 U.S.C. § 406, 1383(d)(2)(D)). A claimant may waive their right to counsel, provided that they have "sufficient information to enable [them] to choose whether to retain counsel or proceed pro se." *Id.* In determining whether the claimant had sufficient information, courts in the Eighth Circuit consider "any written notices from the SSA explaining the claimant's right to counsel and the claimant's replies." *Id.* (citing *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990)). Additionally, courts in the District of Minnesota consider whether the claimant was aware of their right to an attorney specifically at the hearing. *Id.*

Based on the transcript and the administrative record, it is clear that Ms. W. understood her right to counsel and had sufficient information upon which to base her decision of whether to retain counsel or proceed pro se.[2] She was informed of

---

[2] Ms. W. discusses the actions of at least one Social Security Administration employee

4

her right to counsel several times in writing, including each time she received a notice of hearing.  (*See* R. 101, 104–11, 118–19, 128, 134–35.)  She also received written notice of her right to counsel at the hearing.  Ms. W. signed a document entitled "Decision to Proceed Without Representation" at both her good cause hearing in March 2015 and her disability benefits hearing in June 2015.  (R. 125, 139.)  The documents Ms. W. signed each time were identical and stated "I am here today for my social security hearing.  I have been told, and I understand, that I have the right to be represented by an attorney or other qualified representative."  And at both the good cause hearing and the disability benefits hearing, ALJ Thrasher began the proceeding by explaining to Ms. W. her right to representation, what a representative could do for her, and ensuring that she understood her rights.  (R. 728–30, 770–72.)

Ms. W. argues that she did not have full knowledge of what a representative could do for her because the ALJ did not specifically state that a representative could assist in cross-examination of witnesses.  The Court disagrees that her waiver was ineffective for this reason.  The Eighth Circuit does not require specific information or statements to be made to a claimant before that claimant waives their rights to counsel.  Rather, only "sufficient information" to enable a claimant to make an informed choice is necessary.  *Hungerford*, 2014 WL 7272669 at *12.  Furthermore, the written information provided to Ms. W. with both Notices of Hearing specifically stated that a representative can assist in questioning any witnesses.  (*E.g.*, R. 104, 134.)  Therefore, Ms. W. was provided at least twice with notice of a representative's ability to cross-examine witnesses.  This is sufficient information to validate as knowing her ultimate choice to proceed pro se.  *See Hungerford*, 2014 WL 7272669 at *12; *Stroud v. Barnhard*, No. 04-cv-35 PAM/JGL, 2005 WL 679074 at *2 (D. Minn. Mar. 22, 2005) (finding that claimant had knowingly waived her right to counsel after

---

when describing the facts underlying this case, alleging that he discouraged her from seeking counsel prior to her good cause hearing.  She does not further develop these facts into an argument.  However, even if she did, that argument would fail for two reasons.  First, the employee told Ms. W that a representative was not necessary for her good cause hearing.  (R. 321.)  Ms. W. was successful at this hearing, so no harm resulted, even if the advice were improper.  More importantly, that same employee specifically told Ms. W. that she could get an attorney for the ultimate benefits determination hearing.  (*Id.*)  Therefore, any advice regarding counsel for the proceeding now at issue reminded her of her right to counsel rather than discouraging her.

5

receiving three notices about her right to counsel and the ALJ confirmed that she wanted to proceed pro se at the hearing); *Filipi v. Shalala*, No. 3-93-785, 1994 WL 706692 at *2 (D. Minn. Sept. 30, 1994) (finding knowing waiver of the right to counsel where claimant had received two written notices about her right to counsel and the ALJ confirmed her wish to proceed pro se).

An examination of the hearing transcript itself further undermines Ms. W.'s claim that she was prejudiced by her lack of counsel. For example, she was afforded the opportunity to question witnesses and was even given suggestions regarding how to do so. After ALJ Thrasher examined the medical examiner, he offered Ms. W. the opportunity to ask him questions in response. (R. 757.) It is true that ALJ Thrasher did not use the words "cross-examine," but the Court does not fault ALJ Thrasher for instead using language that a layperson would be likely to understand. And ALJ Thrasher made several attempts to assist Ms. W. in her cross-examination, including advising her to use the form of a question when examining the medical examiner and attempting to offer suggestions, although the transcript shows that Ms. W. often interrupted ALJ Thrasher and he was therefore unable to make his suggestions. (R. 757–60.) ALJ Thrasher also offered Ms. W. the opportunity to cross-examine the vocational expert, which she declined. (R. 766.)

Additionally, the proceeding itself was not marked by clear prejudice or unfairness due to her lack of counsel. Ms. W. overstates the record when she argues that she was confused to such a degree that she should have been pushed to obtain counsel. While it is true that at least one court has found unfairness where a pro se claimant was confused, *see Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980), Ms. W.'s case is ultimately distinguishable. The record here simply does not demonstrate that Ms. W. was so confused as to render her waiver of counsel reversable error. In *Sims*, the court found that not being represented caused clear prejudice to a pro se claimant who appeared confused and whose testimony was "directionless and generally incoherent." 631 F.2d at 28. Ms. W. has not argued or demonstrated that her testimony was directionless" or "generally incoherent." On the contrary, the transcript shows that Ms. W.'s testimony was clear, and although she appeared confused by legal technicalities, she remained focused and competent before the ALJ. Second, Ms. W.'s thorough and articulate written submissions well demonstrate both her ability to represent herself adequately. (*See, e.g.,* R. 342–345.)

6

## 2. The ALJ's Duty to Pro Se Claimants

The ALJ's duty to a pro se claimant goes beyond simply assuring that she has knowingly waived her right to counsel. Because a social security hearing is non-adversarial, the ALJ has a duty to fully develop the record. *E.g.*, *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). When a claimant is unrepresented, the ALJ's duty is heightened. *E.g.*, *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994); *Wingert v. Bowen*, 894 F.2d 296, 298 (8th Cir. 1990). However, "the ALJ is not required to act as substitute counsel for the claimant, but only to develop a reasonably complete record." *Filipi v. Shalala*, No. 3-93-785, 1994 WL 706692 at *4 (D. Minn. Sept. 30, 1994) (quotation omitted).

Although courts often defer to the ALJ's judgment when determining how much evidence was necessary to fully develop the record, they may remand the case when "material facts" have been omitted. *Id.*; *see also Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). When the record does not contain enough evidence to "determine the impact of a claimant's impairment on his ability to work," the failure to develop the record is reversible error. *Id.* Here, despite the deferential standard of review, the Court finds that ALJ Thrasher did not fully develop the record.

Ms. W. argues that ALJ Thrasher did not meet his duty to develop the record because he failed to ask questions about her mental health during the hearing, even though Ms. W. identified depression among her impairments in her application. The Commissioner argues that Ms. W. failed to provide evidence in the record that would have alerted ALJ Thrasher to the possibility of a severe mental impairment. However, the Court finds that there was sufficient evidence before ALJ Thrasher trigger his duty to more fully develop the record with regard to Ms. W.'s claimed mental health symptoms.

The record contains information that Ms. W. suffered from depression, anxiety, somatoform disorder, and potentially dysthymic disorder and post-traumatic stress disorder during the relevant period. (R. 358, 394, 468.) These diagnoses came from three different doctors that Ms. W. visited over a period of 13 months for mental health symptoms—two psychologists and a sleep specialist. The record also

demonstrates that she sought treatment for her symptoms by visiting a therapist. (R. 356, 394, 396.) Despite these facts placing him on notice about Ms. W.'s possibly severe mental impairment, ALJ Thrasher did not further develop the record with regard to these symptoms.

ALJ Thrasher declined to further explore Ms. W.'s mental health issues because he found that none of her mental health diagnoses met the 12-month duration requirement. (R. 24.) *See* 20 C.F.R. § 416.909 (defining the duration requirement), 416.920(a)(4)(ii), (iii) (requiring impairments to meet duration for disability finding). The Court finds that this conclusion is contradicted by the record. There are three different indications in the record that Ms. W. is suffering from a mental illness, which span a total of 13 months. The first diagnosis that Ms. W. received was from a visit on December 10, 2008 with Dr. Monica Mandell, a clinical psychologist. Dr. Mandell indicated diagnostic impressions of depressive disorder not otherwise specified, anxiety disorder not otherwise specified, and two "rule out" diagnoses for dysthymic disorder and posttraumatic stress disorder. Ms. W. was next evaluated by Dr. Craig Barron on October 24, 2009, only ten months after her previous diagnosis, who diagnosed her with somatoform disorder, major depression, and anxiety disorder not otherwise specified. Three months later, Ms. W. was seen by another practitioner for sleep studies, Dr. Michael Schmitz, on January 28, 2010, and diagnosed in relevant part with "depressive disorder, not otherwise specified, rule out dysthymic disorder." ALJ Thrasher, in his decision, discounted this diagnosis of depression by focusing solely on the rule-out diagnosis of dysthymic disorder, without acknowledging the clear diagnosis of depressive disorder, not otherwise specified. This is a critical error. With a third depressive disorder diagnosis coming 13 months after the first diagnosis, this possibly severe impairment cannot be dismissed based upon the durational requirement.

Second, the Court finds that ALJ Thrasher had enough notice of a severe mental health impairment to trigger a duty to develop the record. "If sufficient evidence alerts the ALJ to the *possibility* of a severe mental impairment, the ALJ must further develop the record about mental impairments before ruling on the severity of the claimant's impairments." *Byes*, 687 F.3d at 916 (emphasis added). The record in this case does not contain voluminous evidence regarding Ms. W.'s mental health impairments, but what is present raises the possibility of a severe impairment. First,

8

as discussed above, Ms. W. has a mental health diagnosis that has been carried forth for more than 12 months, which is discussed in the records of three providers. Second, there is evidence in the record to suggest that Ms. W. pursued therapy as treatment for her impairments. (R. 356 (noting involvement in psychotherapy up until the summer of 2009), 394 (noting that Ms. W. was advised to continue seeing her current provider for therapy, and that it would be inadvisable for her to see two different therapy providers), 396 ("[Ms. W.] is finding benefit from therapy with Monica Mendell [sic] and is finding it to benefit her.").) This indicates that not only had she been diagnosed with depression, but she sought treatment for it. Third, although the record is sparse on how Ms. W.'s mental health affects her functioning, what information there is suggests that Ms. W. may have a severe mental impairment. For example, the only record of an analysis of Ms. W.'s activities of daily living indicate that she only bathes and changes clothes every two days, that she only eats once a day, and shops irregularly at odd times to avoid crowds. (R. 357.) Furthermore, the record shows that Ms. W. has few social connections, reporting no friends and no membership within social or religious organizations. The doctor who recorded this information even went so far as to suggest that Ms. W.'s mental health condition might render her unable to work. (R. 358.)

The Court finds that this factual backdrop should have indicated to ALJ Thrasher that Ms. W. might have had a severe mental impairment, thus requiring him to develop the record further and to analyze the impact of her condition on her ability to work. Unfortunately, he did not do so. During the hearing, ALJ Thrasher asked no questions regarding mental limitations to Ms. W., the medical expert, or the vocational expert. He also did not ask Ms. Wm about whether she had ever seen a therapist or for any details about those visits, despite the fact that the record contained indications that Ms. W. was in therapy. Indeed, the SSA had contacted Ms. W. seeking records regarding therapy, though she was unsure if she had any. (R. 41.) Nor did ALJ Thrasher address the impact of Ms. W.'s illness in his decision; after he incorrectly found that the mental health claims were not medically determinable, he did not analyze them further. Accordingly, the Court finds that ALJ Thrasher did not adequately develop the record regarding Ms. W.'s mental health impairments as required by law. *See, e.g.*, *Wingert*, 894 F.2d at 298; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("This duty requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts'" (quoting *Cox v. Califano*,

587 F.2d 988, 991 (9th Cir. 1978))); *Cox*, 587 F.2d at 991 ("He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." (quotation omitted).) As a result, the record does not contain enough evidence to determine the impact of Ms. W.'s impairment on her ability to work. *See Byes*, 687 F.3d at 916. Thus, the Court recommends remand for further consideration of this issue.

This recommendation affects two additional arguments made by Ms. W. First, she argues that, aside from his duty to develop the record, ALJ Thrasher failed to properly evaluate her mental health impairments. Specifically, she argues that ALJ Thrasher should have found her depression and anxiety to be severe impairments, or at least to be nonsevere impairments, and therefore was required to give them weight in determining her RFC. *See* 20 C.F.R. § 416.945(a)(2). Because the record is not developed enough for the Court to determine if ALJ Thrasher's ultimate determination was made with or against the substantial weight of the record, the Court cannot does not address this argument at this time. However, on remand and with the assistance of a more complete record, the ALJ will surely carefully consider the effect, if any, of Ms. W.'s mental impairments on her RFC.

Second, Ms. W. argues that had her RFC determined that she was only capable of "unskilled" work due to her mental health impairments, she would have been entitled to a finding of "disabled" due to the application of Medical Vocational Rule 202.06, 20 C.F.R. 404 (P) Appendix 2. Rule 202.06 indicates that a person of "advanced age,"[3] with an education that does not provide for direct entry into skilled work, whose skilled or semi-skilled previous work experience is non-transferable should receive a "disabled" decision. For the same reasons stated above, the Court does not reach a conclusion as to this argument. Instead, the ALJ should consider this question in the first instance.

## B.     The Appeals Council's Refusal to Consider Additional Evidence

Ms. W. also argues that the Appeals Council compounded ALJ Thrasher's alleged error by refusing to consider additional evidence submitted to it. However, the Appeals Council is only required to consider additional evidence that an appellant

---

[3] Aged 55 years or older. 20 C.F.R. 404 (P) Appendix 2, 201.00(d)

provides in certain circumstances. The Court concludes that those circumstances were not met here.

Regulations define when additional evidence submitted after the ALJ's decision will be considered by the Appeals Counsel. Section 404.970(a)(5) of Title 20 of the Code of Federal Regulations states:

> The Appeals Council will review a case if, [subject to a good cause requirement,] the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

Evidence is new when it is "more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). Evidence is material when it is "relevant to [the] claimant's condition for the time period for which benefits were denied." *Id.* District courts review de novo whether the evidence at issue meets the regulatory requirements. *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

The record contains almost no indication of what materials Ms. W. submitted for consideration by the Appeals Counsel, making it difficult to review her claims of error. However, the single document before the court, which was attached to her Reply Brief (ECF No. 21) undermines rather than supports Ms. W.'s position. This document is a record of a psychological evaluation performed by licensed psychologist Dr. Craig Barron on November 10, 2015—two months after ALJ Thrasher's decision. This evaluation does not relate to the period on or before the date of the hearing decision because the evaluation occurred after the ALJ's decision, and nothing suggests that the assessment is "probative of [Ms. W.'s] condition for the time period for which benefits were denied." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Rather, the evaluation is based on symptoms as reported by Ms. W. and assessed by Dr. Barron several months after the relevant time period. Thus, the Court finds that it did not need to be considered by the Appeals Council.[4]

---

[4] The Court notes that because it is remanding this case, the additional evidence that does relate to the period on or before the date of the hearing decision should be considered on remand. *See* 20 C.F.R. § 404.983.

### III. Recommendation

Based on the foregoing, the Court recommends that Ms. W.'s Motion for Summary Judgment (ECF No. 18) be **GRANTED IN PART AND DENIED IN PART** and the Commissioner's Motion for Summary Judgment (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART**. Ms. W.'s petition should be remanded to the ALJ for further proceedings not inconsistent with this opinion and pursuant to sentence 4 of 42 U.S.C. § 405(g).

Dated: January 28, 2019                         *s/ Katherine Menendez*
                                                Katherine Menendez
                                                United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.